Good morning ladies and gentlemen. We have four cases on the calendar this morning. A case from the Bureau of Justice, two patent cases from District Courts, and a case from the Court of Federal Claims. The latter will be submitted on the briefs and will not be argued. The first case is Gene Richards et al. v. Department of Justice, 2009-2006, Mr. Wassmer. May it please the Court, my name is Webb Wassmer, and I represent petitioners Gene Richards and her children in this matter. Their husband and father, James Richards, died of a heart attack on October 20, 2003 while fighting a fire. The Bureau of Justice Assistance denied the claim of his surviving wife and children. The regulation says very clearly that the injury cannot be caused by stress or strain. Regardless of some of the procedural details, is there any way for you to get around that? Our evidence is that the death was precipitated and caused by smoke inhalation and heat. We submitted evidence from Dr. Brown on that point. But if you get into an evidentiary battle, of course you're going to lose because they've got Dr. Sina saying it was strain. The chief on the spot checked that he was overweight and died of strain and stress. So there's at least enough evidence there to support the decision that has already been made. How can you get past... In other words, I don't think you're going to win by balancing the facts here. Do you have anything that can help us determine otherwise, that you can get around that regulation? Well, first of all, on the couple of factors that you mentioned, the fire chief is not a medical person, so his opinion as to what the cause of death was is to that effect. With Dr. Sina, there was nothing in the record indicating what his qualifications were or with what degree of certainty he held his opinions. The other argument that we've raised, the presumption under the Hometown Heroes Survivors Benefit Act of 2003, if decided in petitioner's favor, would obviate any need to look at the evidentiary issues in the case because if that presumption applies, it's clear that Mr. Richards died while fighting a fire. He was in the act of fire suppression when he had the heart attack and died, and that would apply. But you're asking for retroactive application of the HHA, which the legislative history indicates it should not be retroactively applied. Well, the legislative history does not indicate much in either direction. Well, it's pretty clear in the legislative history, statements to the effect that retroactivity is not applicable.  That he basically makes a brief comment on or after the date. That's just the statement of one legislature, although it is a sponsor of the legislature. And it is part of the legislative history itself. It is, but under the case law from the Supreme Court and this Court, the statements of one legislator are a thin reed, basically, to determine what the entire intent of Congress was. Now, I agree that the legislation itself does not contain any express statement by Congress as to whether or not it applies retroactively or doesn't apply retroactively. I think one of the things to keep in mind is that this is predominantly an evidentiary presumption that we're dealing with here. And evidentiary presumptions are generally applied at the time the decision is made. And at the time the Bureau of Justice Assistance made its decision in this case, the presumption of the Hometown Heroes Act was in effect. In fact, it had been in effect for about a year and a half at the time the Bureau of Justice Assistance made its decision. Under this Court's decision in Princess Cruises, the Court looks to several different factors in deciding whether or not something, in effect, applies retroactively. The first is the nature and extent of the change. Here we're talking about an evidentiary presumption. Mr. Wassmer, are you familiar with the Woodward case? I am. I read that. Does that do anything for you? I think that does on the second argument, the application of the presumption under the regulation for unreasonable doubts construed in favor of allowing the claim. But isn't that your best argument that, in effect, it's not the statute which is retroactively applied, but the Justice Department applied the regulations from the new act retroactively? Well, Petitioner's view is that both the presumption from the act and the regulation on reasonable doubts should apply because both were in effect at the time the Bureau of Justice decision made its initial decision. Subsequent proceedings are essentially in view of that. But isn't the filing date or the date of the accident what counts, not when the decision was made? Not with respect to rules of evidence and procedure. Those are generally applied as of the time the decision is made. One of the things I wanted to point out to the court, I listened to the audio of the oral argument in Woodward last week, and the attorney for the Department of Justice in that case made a very important concession towards the start of her argument. That case, as the court knows, was about whether or not that change to the reasonable doubt regulation applied to a claim found before the regulation was changed but decided after the change. She stated that the Bureau of Justice Assistance has a long-standing policy of applying whatever regulations are in effect to the pending claim at the time it's decided, and was basically arguing under the fair notice reliance part of the Princess Cruz's factors that the claimant in that case was on notice of the new regulation and therefore couldn't be prejudiced by it. With that concession by the Department of Justice, that would seem to me that the Department of Justice, the Bureau of Justice Assistance are conceding, at least they did in that case, that the law that's in effect at the time that decision is made is what applies, which in this case, because of the timing, would be both the presumption under the Hometown Heroes Act and the reasonable doubt regulation. Well, I don't think that the statute was retroactively applied. Woodward was the regulations that were retroactively applied. Yes. What was at issue in Woodward was the regulation. The statute was not expressly at issue. There's half a sentence in Woodward that says the statute does not apply, but under this Court's precedence, that would be dicta as that issue was not argued in Woodward or in the Bice decision, which also has a sentence that says there's no retroactivity. It wasn't argued in those cases, and there was no analysis by the courts involved as to the interpretation. Aren't you arguing against yourself by saying that the rule, the burden of proof that's in effect at the time of the decision should apply? That's the higher standard, more likely than not, which is in effect at the time of this decision. Aren't you better off arguing the reasonable doubt standard, which was in effect at the time of the event? No. The reasonable doubt standard was in effect both at the time of the event and at the time the Bureau of Justice decision made its initial decision in March of 2005. The regulation was not changed until August of 2006. In fact, the regulation was not changed until after everything had been submitted and the evidence and the briefs. I don't know if the Court has yet received the response to the Government's 28-J letter by Woodward that I submitted last week, but attached to that response, I attach a page from the February 23, 2006, request for review of the hearing officer's decision filed by my client in which petitioners specifically referenced and relied upon the reasonable doubt standard. All the briefing that was done, the evidence was in. The regulation was then changed after that so that presumption was not applied by the Bureau of Justice assistance in favor of the petitioners in this case. So which regulation should be applicable at this point? The reasonable doubt regulation. The ones that were in effect in March of 2005 when the Bureau of Justice assistance made its initial decision. That's different from what the Bureau applied. That's different than what, Your Honor? The standard that the Bureau applied. That is different than the standard the Bureau applied. The Bureau applied actually different standards, I think. The reasonable doubt may or may not have been applied in the initial decision. The initial decision is a very cursory document denying the benefit claim without any significant explanation as to what law is being applied and why it's being denied. If there is substantial evidence on the record to support the decision of the Bureau that this was stress and strain, do we need to deal with these regulations about the burden shifting and the particular standard to apply? Yes. In Woodward, and then also in the Court of Federal Claims of Early Decision and Vice, in both cases the courts found that the Bureau of Justice assistance had not properly applied the regulations. Particularly Woodward had not applied the reasonable doubt. The facts of Woodward are not all that different than the facts of this case. In Woodward, the evidence of the cause of death was lacking because the toxicology report had been falsified. In this case, the evidence of Mr. Richard's inhalation of smoke was lacking because oxygen had been administered for 40 minutes before he died. It was essentially unrebutted in the evidence that administration of oxygen was the treatment for carbon monoxide inhalation and that oxygen will flush the carbon monoxide out of the system. Didn't the Greeley case kind of dispose of that argument, however? No, I do not believe so. Greeley, there's two factors that distinguish it. One is in that case the claimant's expert said that the death might be due to smoke inhalation. In this case, Dr. Brown's opinion that smoke inhalation was a causal factor was based on a high degree of medical certainty. That's a much different statement than might. There was also in Greeley evidence that Mr. Greeley was wearing a breathing apparatus which would have reduced or eliminated his exposure to smoke. In this case, the evidence was that Mr. Richard's was not wearing a breathing apparatus. Mr. Wassmer, hypothetically, if we remand it back to the board for review, would there be any additional evidence to be submitted at that point or would it just be a re-weighing of the evidence under the former regulation rather than the new regulation? I do not anticipate any additional evidence. I'd have to fully think that through in the event of a remand. I think it would mostly be a decision based on the application of the draft law and the existing evidence. Looking at the point you just raised about the breathing apparatus, none of the firefighters at the scene had the breathing apparatus. None of the rest of them experienced any smoke difficulty. Won't that weigh pretty heavily against you? The court of claims in Bice's decision found that that was irrelevant as to whether other firefighters had inhaled smoke or had any consequences of inhaling smoke. Essentially, the inhalation of smoke combined with the pre-existing heart condition that Mr. Richard's had is what triggered the heart attack. Those other firefighters may not have had pre-existing heart conditions, may have been in a different location in the fire, breathing different amounts of smoke. I would like to save the rest of my time for rebuttal. We'll save it for you, Mr. Wasserman. Mr. Oliver. May it please the court. The director's determination below should be affirmed because claimants failed to satisfy their standard of proof. They might have failed to offer any evidence of smoke inhalation, much less proof. What's the standard of proof? The standard of proof is more likely than not under 28 CFR 32.5. Now, the Woodward decision, which... Yeah, Woodward. Doesn't Woodward have some effect on that? Well, we argue that the Princess Cruz factor analysis that the court applied in Woodward weighs heavily in this case in favor of applying the rescission of the reasonable doubt regulation retroactively, primarily because the outcome of Princess Cruz analyses almost always turns on the reliance of the prior party on the state of the prior law. And in Woodward, of course, the claimants waived hearing and did not submit additional evidence, such as the revised NIOSH report, in reliance on the reasonable doubt provision. And as you just heard the claimants' counsel acknowledge, there's no additional evidence that they're going to present on remand. There's no reliance, no detrimental reliance, by the claimants on the reasonable doubt provision. As they announced on page 17 of the brief, no evidence was collected. But, Mr. Oliver, excuse me for interrupting, but what happens in a situation where the evidence is in the record and the evidence is weighed under a reasonable doubt rule instead of more likely the not rule? Isn't that a difference weighing of the evidence at that point? Yes. We argue that even if you assume that the reasonable doubt provision applies, that the rescission of the reasonable doubt provision is not retroactive and applies to this case, the outcome would be the same as a matter of law. Because as this court stated in Greeley, in order for the reasonable doubt provision to even be triggered, the claimants have to establish a prima facie level of evidence with respect to injury. And here they have failed to do that. There is no evidence. Well, they've got Dr. Brown saying that it was smoke inhalation that caused the heart attack. Yes, that's correct. Dr. Brown's opinion states that, with a high degree of certainty, that climatic conditions, i.e. the smoke, the fire, precipitated the death of Mr. Richards. However, that formulation, that opinion one, is simply conclusory. There are no factual bases whatsoever in Mr. Brown's opinion that substantiate that. But second, probably even more importantly-  Well, the first objection, actually, which I should have stated, is that the opinion, that conclusion, is not in and of itself sufficient to meet the standard under the statute. The statute states that you must show that the injury was the direct and proximate cause of death, meaning, as the courts have interpreted- That was the original statute, not the new statute. No, well, exactly. Well, not the hometown area. Not the amended statute. Not the hometown area, but the original statute states that you must show direct and proximate causation, and that means that the claimants must show that the injury contributed to the death, to as great a degree as the underlying heart disease. But that's weighed on a reasonable doubt basis, under the old regulation, under the old statute. Under the old statute, if you assume that the reason without provision applies, and we are contesting that, but even if you assume that it applies, that's correct. But you still, as this court stated in Juneau, there must be some evidence of smoke inhalation, and there simply is no evidence of smoke inhalation. In order for that, reasonable doubt simply is an evidentiary mechanism that acts as a tiebreaker. So you cannot reasonably, as this court stated in Morrow, if you cannot reasonably determine whether or not the death was caused by heart disease or by smoke inhalation, then it's a tiebreaker. It weighs in favor of the claimants. You're saying to have a tiebreaker, you need a tie. Exactly. You need a tie, but you don't have a tie because there's no evidence of injury. As you know, as they acknowledge on page 22 of their brief, there's a lack of physical evidence of smoke inhalation, and there's not a single firefighter who testified that they saw Mr. Richards inhale too much smoke, including the chief who was working alongside Mr. Richards as they were trying to fix the malfunctioning bumper truck. In fact, as was indicated, stated in the FEMA fire casualty report form, that it was overextension and stress. He could have selected exposure, meaning heat or smoke, but he did not. So here, again, there's no prima facie evidence of smoke inhalation, and so therefore even if you assume that the reasonable doubt provision applies and the rescission does not apply retroactively, then they would still lose as a matter of law. What about Dr. Brown's testimony over the fact that the environment in which Mr. Richards was involved at that time did cause some kind of inhalation or otherwise? Well, his testimony, to be precise, Your Honor, is that the smoke and the fire precipitated his death, Mr. Richards' death. But again, let me be clear, that does not equate to direct and proximate causation. The fact that it precipitated, had some role in his death, is not the same as saying that it was as much of a factor as the heart disease and the stress, which is what claimants have to prove under the regulations. Again, not the reasonable doubt, we're talking about the definition of direct and proximate causation. So his opinion in and of itself is facially inadequate to establish that claimants suffered an injury under the old statute. Now, moving along to whether or not the Hometown Heroes Act is retroactive, the government argues that it certainly is retroactive. The Supreme Court's decision to not be applied retroactively, the Supreme Court's decision in Landgraf stated that a statute is impermissibly retroactive where one, it increases the government's liability for past actions, and second, Congress did not express a clear intent in favor of retroactivity. And both of those conditions are clearly met here. The point of the Hometown Heroes Survivor Benefits Act is to enlarge the category of cases in which the government is liable to pay benefits. For instance, if you have a hypothetical case where a firefighter died as a combination of stress and underlying heart disease. Under the old statute, as was mentioned in the prior discussion, there's no liability because the implementing regulations exclude stress. Now, Mr. Weber, are you arguing that the Hometown Heroes Act should be applied retroactively, but the regulation not? Isn't that kind of conflicting opinions? No, to be clear, I'm arguing that the Hometown Heroes Act, which was enacted on December 15, 2003, does not retroactively apply to Mr. Richard's death, which was on October 20 of that same year, for two reasons. Again, it enlarges the category of cases in which there's liability. Under the Hometown Heroes Act, if it's clear, the medical evidence is clear, there's stress and heart disease that caused the death, then there is a presumption that he died as an injury. So that's the exact opposite conclusion. So clearly, there's increased liability. And clearly, the second problem of whether or not Congress intended retroactively here, Congress intended for it not to be retroactive. Three days before the passage of the final bill, there was a provision that would have made the Hometown Heroes Act retroactive to January 2003. That was taken out. And then you had Senator Leahy, who was a co-sponsor, one of the co-sponsors of the bill, stating that it applies to deaths that occurred as of the date of the enactment of that act. So clearly, under the Supreme Court precedent land graph, the Hometown Heroes Survivor Benefits Act does not apply retroactively. Now, getting back to your question with regard to the reasonable doubt provision, again, the analysis is under Princess Cruz, because here we're dealing with a private party that issues whether or not they relied on the prior state of the law. But then you're saying the regulation should be applied retroactively. Is that right? Well, we're saying that the appeal... So we still have the inconsistency problem. Well, not so much, because the argument is that, again, in 2006, there was a repeal of the reasonable doubt provision. So at the time the director made his determination, the reasonable doubt provision had been rescinded for about two years. Of course, they filed their claim in October 27 of 2003. So the issue of whether or not that regulation, the repeal of that regulation, is retroactive. And I'm arguing that it is retroactive because there's no detrimental alliance. Again, the courts, in all the cases I've looked at concerning Princess Cruz, the analysis turns on detrimental alliance. How did they change their position to their detriment? And again, as they've acknowledged, the evidence is the same. They cite in their 28-day letter that they cited the reasonable doubt, but you can't just say that you cited it. You have to show, well, we failed to put in evidence in the record because we thought we would win under the reasonable doubt, which is what the claimants in Woodward did. And so the other problem, which is not a decisive problem, of course, is whether or not there was a prior state of whether or not there was a change in the law. And there certainly was a change. There was a repeal of the reasonable doubt, but there was not a change in the standard of proof, because the more likely than not standard. It was codified. It was formally recognized in 28 CFR 32.5 in 2006 amendments, but that was always the standard. It was not in the regulations, but as the BJA recognized when it commented on its rule at 71 Federal Register 46035, that was always the rule, the BJA stated, and it's written when it commented on its rule. And in fact, the claimants acknowledge in their brief that the more likely than not standard is the standard. On page 7 of their brief, first line of their summary of argument, more likely than not standard applies. On page 16 of their brief, preponderance of the evidence is the standard. They did not at any point argue that, well, the more likely than not standard does not apply, because it was not formally the standard that was. Mr. Oliver, could I return to your big point about direct and proximate cause being the standard that has to be applied? I think when we hear from Mr. Wassmer, he's going to say, oh, it's just a substantial factor test. Which is it and why? It's the same. Part of the definition of what direct and proximate causation is is whether or not the injury is a substantial factor in Mr. Richard's death. And what substantial factor means, according to the regulations, is that the injury contributed to the death to as great a degree as the underlying heart disease. So there's no inconsistency. It's that the substantial factor is part of the definition of what it means to have a direct and proximate causation. Anything further? If there are no further questions from the panel, then I would simply ask that you confirm the decision for the reasons stated. Thank you, Mr. Oliver. Mr. Wassmer has a little rebuttal time. Thank you, Your Honor. One of the things to look at in this case is that the Bureau of Justice Assistance is inconsistently arguing that the change in 32.4 doesn't apply because it was not in effect at the time of the hearing, even though it was a final decision, even though it was in effect at the time of the death. But the Hometown Heroes Act doesn't apply because it was not in effect at the time of the death, even though it was in effect at the time of the hearing. I think one of the simplest things for the Court to do here is to essentially follow Woodward and send this back for looking at this case again under the reasonable doubt standard. Mr. Wassmer, how do you reply to the issue of reliance that was raised by Mr. Oliver? Well, as I mentioned in the opening argument here, the brief that was filed by my clients before the Bureau of Justice Assistance referenced and relied upon the reasonable doubt regulation. That was filed in February of 2006. At that point in time, all the briefing was done, all the evidence was in, and then the amendment that's at issue here to the regulation took effect after that in August of 2006 and was applied. I think also the Court should look at the Woodward decision in that there's two alternative bases for the holding of Woodward. As I read Woodward, and I know Your Honor is the author of that opinion, so you have a better position to determine this than I am. It's the Court's opinion, not my opinion. Okay, the Court's opinion, although you were involved in that case. The way I read that opinion is that the primary basis for the holding was that the regulatory amendment constituted a significant change in the law that imposed a more stringent burden of proof, and that that in and of itself was a sufficient reason to apply the prior version of the statute, the reasonable doubt test. And then as an alternative basis, the Court looked at the reliance question and found in that particular case that the petitioners there had not submitted evidence. Here, as I said, it was argued. I don't know that there had been any additional evidence to submit. I don't know where any additional evidence would come from. That was the same problem in Woodward. There was no real additional evidence, I don't think, that could have been submitted regarding carbon monoxide because the body had been cremated,  There was nothing left to test. Essentially, all the petitioners are asking here is the reversal of the Bureau of Justice Administration's decision and a remand for an award of benefits. One small correction to the brief. I indicated that the benefits were $250,000. I've sensed there was a cost-of-living adjustment and the applicable benefit in this case, based on the date of death, would be $267,494. Thank you. Thank you, Mr. Wasserman. The case will be taken under advisement.